Appellant. Mr. Ornberg for the Appellant. Mr. Romano for the Appellee. Good morning. May it please the Court. I'm here to ask this Court to review the well-established principles and standards set forth in the Danny Jones case, which Chief Judge Garland,  was a member of that panel back in 2011. I'm asking the Court to find that the District Court in this case abused its discretion when it found, or did not find, that there were fair and just reasons for granting the Appellant motion for new trial. The factors that this Appellant has asserted a viable claim of innocence, whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case, and whether the guilty plea was somehow tainted. The government below, and I believe in their briefs, has conceded the second point, that there was no prejudice in the delay. I'm focused, and I'm asking this Court to focus, on whether the guilty plea was tainted. Before we get to that, I'd like to keep things in order. Could you talk about the question of whether there's actual innocence? I didn't read anything in the brief to suggest there's any disagreement with the statement of the offense that he previously agreed to. Well, I beg to differ slightly with Your Honor. Mr. Brown did differ, or has asserted that he was attempting to differ, with the statement of the offense and what he pled guilty to, to his prior counsel. I was not counsel when there was a substitution of counsel, as the Court well knows. You're his third counsel. I'm his third counsel. The first substitution of counsel was caused because his initial counsel left the Federal Public Defender's Office. My client asserts that he attempted to communicate to his counsel, in a timely fashion, his concerns about the Fourth Amendment issues in this case, and the chain of custody issues. That doesn't get you to the question. The question is whether there's a viable claim of innocence. And the search and seizure issue is not relevant to that. The Supreme Court held that in the habeas case. Correct. Stone versus Powell. Right. So where is the actual innocence? Well, the actual innocence is hinged on that. Again, my client believes that he had a right, certainly before he tendered his voluntary guilty plea to the District Court, to proceed to trial. He realized, and as I set forth in my brief, he was pressured for the reasons, for the underpinning reasons, the mental health issues. That doesn't go to the question whether he was guilty of the offense or not. Maybe we can narrow this a little bit. So I'm going to read parts of the statement of the offense. Right. Can you tell me whether he disputes them? So the first is that during the court of this electronic chat, the defendant sent two videos depicting pre-pubescent children being sexually abused by adult men. Does he dispute that he sent those videos? Your Honor, the record is clear that shortly after he was arrested and throughout the process, throughout the post-arrest investigation, he candidly admitted his involvement in the offense or the offenses charged in this case. However, what I'm asking the court to do today is to, of course, remand this case back to the District Court, but to give some guidance in this unique situation. This is, in a survey of all the cases that have addressed this issue, this is a unique situation given the level of the mental health background of my client. So he had at least two previous mental evaluations by psychologists. Correct. One at the time of the magistrate's appearance, that would have been his first public defender lawyer, right? That's correct. And that resulted in a finding that he was capable of understanding the proceedings and competent, right? But that's as to competence. No, I just want to be sure I get the facts. And then when he pled, the new public defender had yet another evaluation, and the same finding was made that he was competent. As to competency. Right. So what, I understand you're making the argument that there's an additional matter besides competence, and what is that? Well, that his substantial mental health background and the clinical impressions that are in the report should have given the District Court some reason to pause and to further explore and perhaps, there was a very cursory, in the Rule 11 colloquy, it was very cursory, you know, how do you feel today? You know, do you understand what's going on about any mental health? Yes. Mr. Miles, the transcript shows, are you okay with his comment to go forward? Yes, yes, yes. But I think that he also, Mr. Miles being the public defender, he also said, I was concerned, I had him evaluated, and this was the result. He advised the court, and there was no disagreement about that evaluation. Right, but then there was a second evaluation after the plea hearing, right? With the report that was sent back in June of 2017, just prior to the first sentencing in this case. And that report raises considerable alarms, at least in my mind, and it should have in the District Court's mind, that, you know, if the client was competent and feeling good back in either December of 2017, or 16, excuse me, or in February of 2017, and then there's a six-month passage of time, I mean, it's already well documented that the client has ongoing, chronic, and persistent mental health issues. The last, which I take it would be the third report, just the one that's heavily blacked out in our appendix, right? Right, but I understand the court now has an unredacted version. I didn't see anything in it in which the issue you're raising directly was addressed. That is, that the evaluator said he wasn't capable of making a voluntary plea, or is there something like that? No, it didn't address that. It addressed his psychological framework, and where he was at that point in time, or that period of time during which the evaluation was conducted, as compared to his lifetime of mental health issues and counseling and treatment. What does this go to then? Because the criteria that we're talking about is one of the guilty pleas was tainted, and we've moved on to that one, right? Right. And so, what did you think undermines the rule of law? Well, that the district court was aware of the significant level, the high level of mental health history with this client, and should have exercised, as I said, or explored further as to his ability to understand the nature of the proceeding, the charges, the cis-counsel, and all of that, in light of or balanced against his mental health factors. But there was nothing that happened during the course of the colloquy itself that would call into question that? No, there was nothing unusual, extraordinary that the client, you know, broke down or had some trouble. There was no hiccups in the proceeding in and of itself. It was afterwards. It was afterwards the client, as I understand Mr. Brown in this case, the appellant, he attempted to communicate to prior trial counsel his desire to withdraw the guilty plea as soon as possible, but was unable to do so effectively until the day of sentencing, which was in July of 2017, and then I came into the picture shortly thereafter. I notice that I'm into the yellow light time, so I will reserve the rest of my time for rebuttal, unless the court has further questions. Thank you, Your Honor. May it please the court, with me this morning are Chris Ellen Kolb and Andrea Hertzfeld, seated to my left. Your Honors, Judge Hogan properly exercised his discretion in denying appellant's motion to withdraw from his guilty plea. Judge Hogan considered the relevant factors, the test that Mr. Orenberg just spoke about. He found that there was no taint in the Rule 11 procedure or in the entry of the guilty plea. He found that the Rule 11 colloquy was valid and that appellant had not made out a viable claim of innocence, and accordingly he appropriately exercised his discretion when he denied appellant's motion to withdraw. I want to start by drawing the court's attention to page 159 of the first part of the joint appendix. That's where appellant began to speak at the hearing on his motion to withdraw, and addressing the question of whether there was any issue at the Rule 11 colloquy, appellant said to the court that all of the answers I gave you were correct. When the court was asking him if the plea was knowing and voluntary, all of the answers I gave you were correct. And then he went on to say the only thing that we didn't talk about was whether somebody else had helped me make the decision to plead. And so while appellant wanted to add that caveat and spoke about the fact that he was feeling some pressure, he acknowledged that he told the judge the truth. This isn't even a case where appellant is claiming that he was dishonest at the Rule 11. That was my reading as well, Your Honor. And so appellant talks about feeling pressure from his lawyer, appellant talks about the fact that his lawyer didn't want to take the case to trial, but it's significant to note that appellant was facing serious charges and was facing a significant period of time of incarceration. He never alleges that his lawyer did anything improper. And so what appellant appears to be describing is the pressure that any person facing serious charges and facing a significant amount of incarceration would have to weigh. And it's clear that that sort of pressure, the pressure to make a decision about pleading guilty or going to trial and risking a longer sentence, is not impermissible. It's the sort of decision that faces defendants. He does have a considerable history of mental problems. And the question, as Mr. Kornberg puts it correctly, is not only whether he's competent, but whether he's voluntary and is capable of doing something voluntarily. What about that question? Well, the court certainly found that he entered the plea knowing involuntarily at the Rule 11 and then after the fact when evaluating the Rule 11 colloquy. And there's nothing in the record that really calls into question that finding. Appellant does have mental health issues, but he also bore the burden of showing that there was some taint in the Rule 11 colloquy. And he didn't do that. He had the opportunity at the motions hearing to present evidence to testify under oath if he wanted to do so, and he chose not to do so. The record doesn't support his claim that his mental health issues somehow tainted this process, despite his assertions to the contrary, which aren't substantiated other than by his conversation with the court, the eight pages or so in the transcript at the motions hearing. Well, there are at least somewhat substantiated by the law description of his mental difficulties made by Mr. Collins. So, yes, he does have mental health issues, and we don't dispute that. But as to whether or not he failed to understand something or the Rule 11 colloquy was tainted, the evaluation by the psychologist doesn't address that. Appellant didn't advance proof on that issue. And he also said at the top of his statement, that was the page 159 that I referred the court to at the beginning of my argument, that my answers to the court were truthful. So even though he claims on appeal, he argues to this court that his mental health issues interfered with his entry of the plea somehow, that's not what he said to the court. It's not anything that he raised at the time of the Rule 11 colloquy, and it's not what he said to the court during the hearing on his motion to withdraw. We're reviewing a decision that disallowed withdrawal of the guilty plea to determine whether the district court abuses discretion. You're not taking the position that if the district court had gone the other way and allowed withdrawal of the guilty plea, it would have been an abuse of discretion? No, we're not taking that position, Your Honor. But this court is reviewing it for an abuse of discretion, and so our position is that the judge properly exercised his discretion in evaluating the factors here. This was a search without a warrant? Well, there was an arrest warrant. My understanding from the record is that at the time that the arrest warrant was executed, or shortly thereafter, that law enforcement obtained consent to search Appellant's mother's home, where he was living. And Appellant takes issue with whether that consent, or the person from whom consent was obtained, was valid. And that gets to the second prong. The search was not incident to the arrest? No, I don't believe so. I believe it was conducted with consent of one of the parties who lived there. To follow up on this question, the interesting point here is not the search of the home, but the search of the devices, which produced gigabytes of child pornography, including evidence that many more messages were sent with his devices, a telephone and a tablet. Who consented to the search of the devices? My understanding from the record is that he consented to the search of the devices, that his mother or maybe his brother-in-law consented to the search of the home, and that he consented to the search of the devices. I don't remember, unfortunately, exactly where in the record that is, but that's my reading of the record, including the government's submissions to the court. It might be in the sentencing memorandum, but I'm not certain of that. In any event, though, the evidence gained from the search of the home and from the search of the devices, while it did produce additional evidence of other acts of distribution of The crime here was complete before the government obtained an arrest warrant, before any of those searches, and as the government noted and Judge Hogan found, the government had sufficient evidence to prove the offenses before any of those searches took place. The distribution was to an undercover agent. The undercover agent accessed the cloud files that Appellant had and found the child pornography that Appellant sent to him. The government had identified Appellant's identity before the arrest warrant and the search warrant, and so even... Is it proving that it was actually the defendant, at least in part dependent on having the devices to prove that the access to the box file came from those devices? Well, I don't think so, Your Honor, because Appellant sent the undercover agent links to the files, and they were stored, I believe, on a cloud server. The evidence that the appellant who sent it requires some evidence from a device from which it was sent. He didn't do it by video chat or something like that. He did it through either a smartphone or a tablet. Right. So to prove that it's actually him, you would have to prove that he owned the devices. There were other ways of proving that it was him as well. He sent messages to the undercover agent showing his face. The government had records from sex offender registries. They had IP address records which linked back to a relative's home where Appellant was living at the time. So I don't deny that that information would be helpful to proving identity, but I don't think it would have been necessary to proving identity. And that connects back to Judge Randolph's question during Appellant's portion of the claims he was alleging as far as his claims of innocence. The claims that he raised to Judge Hogan, or I'm sorry, the claims that he raises in his reply brief to this court are three, a supposed Fourth Amendment violation, a supposed Fifth Amendment violation, and then claims about the chain of custody of certain electronic evidence. None of those really address whether Appellant is innocent of the charges or not. And as the court noted, he has admitted his guilt on multiple occasions. He admitted his guilt to law enforcement after he was arrested. He admitted his guilt in court when he was under oath. He admitted his guilt to the pre-sentence report writer. And even here today, he doesn't dispute certain evidence or certain elements of the statement of offense that he did distribute child pornography in this case. So Appellant hasn't shown any reason to question the district court's finding that he did not assert a viable claim of innocence. Because he fails to show any defect in the Rule 11 colloquy, because he fails to show that he asserted a viable claim of innocence, he hasn't established that Judge Hogan abused his discretion. And we ask this court to affirm the findings of the district court. Thank you. We'll round up in two minutes. Thank you, Your Honor. You know, even if Mr. Brown had decided to go to trial, he's presumed innocent until proven guilty. So he has a viable defense, the defense of innocence. He tried to communicate to his trial attorney, to his district court attorney, that he wanted to withdraw the guilty plea soon after the guilty plea was taken. But he was unable to do so effectively until just minutes or an hour or so before the sentencing hearing itself. The court is well aware that more deference should be given to the granting of a motion for new trial when the motion for new trial is made before sentencing. This is not a situation where the motion was made after sentencing. You mean a motion to withdraw the plea? A motion to withdraw the plea. Excuse me, Your Honor. Motion to withdraw the plea. Can I just ask, so the claim about innocence, so we're all on the same page here, is about Fourth Amendment rights to object to the search, maybe Fifth Amendment rights to object to the statements, right? Correct. And neither of his two federal public defender lawyers made those arguments. That's my understanding, Your Honor. So isn't this really a claim about ineffective assistance of cause? I'm not saying it's a good claim, but isn't the nature of the claim here, if he thinks that he, if they should have raised this, isn't that the question? These are skilled lawyers. Normally we have the lawyers speak for the client. There are, of course, cases where we find, where the client challenges them as ineffective and sometimes so held. But isn't that the issue here, not really a withdrawal of guilty plea at this point, but some kind of claim that has not yet been raised about ineffective assistance? Well, perhaps that claim can be raised. I'm not suggesting it, but what I'm saying is that it's not, you're not really making a claim of innocence. You're making a claim of ineffective assistance. Well, no, I'm making a, my argument on behalf of Mr. Brown is that the process was tainted because the court did not, as I said, explore or drill down further into the substantial mental health history of my client at the time that the guilty plea was taken. So the third prong. The third prong. The third prong. And I think, this is a unique situation. You know, in a survey of the cases that both Appalese counsel and myself have presented to the court, there is not such a significant mental health component to this type of, you know, motion to withdraw the guilty plea situation. All the other motions to withdraw guilty pleas were based on other things, not the mental health component. Of course, in the Jones case, there was a small part of the case that involved a competency review, but that's not what I'm focusing on And his ongoing, and in the report it says persistent and chronic factors, it suggests that he has a significant mental health history that should have been given deference to by the court, by the district court. Thank you. I will take this matter under submission. We thank counsel from both sides for excellent argument. Thank you, Your Honor. And we appreciate your taking the case. You took this case on the point by the court. We appreciate it. Thank you. Thank you very much.
judges: Garland, Srinivasan, Randolph